# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MARYLEBONE PCC LIMITED—ROSE 2 FUND
ON BEHALF OF ITSELF AND ALL SIMILARLY
SITUATED PERSONS,

        Plaintiff,

    vs.

MILLENNIUM GLOBAL INVESTMENTS LTD.,
MILLENNIUM ASSET MANAGEMENT LTD.,
MICHAEL R. BALBOA, GLOBEOP FINANCIAL
SERVICES LLC, GLOBEOP FINANCIAL
SERVICES LTD., SS&C TECHNOLOGIES, INC.,
BCP SECURITIES LLC and XYZ CORP.

       Defendants.

Case No. 1:12-CV-03835 (PAC)

**PLAINTIFF'S RESPONSE TO OBJECTION OF NON-SETTLING DEFENDANTS
TO PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
WITH DEFENDANT BCP SECURITIES LLC**

# TABLE OF CONTENTS

**Pages**

I.  INTRODUCTION ...................................................................................................1

II.  THE NON-SETTLING DEFENDANTS HAVE FAILED TO ESTABLISH
    STANDING TO OBJECT TO THE PARTIAL SETTLEMENT WITH BCP ..................2

III.  THE MOTION FOR PRELIMINARY APPROVAL OF THE PARTIAL
     SETTLEMENT IS RIPE FOR CONSIDERATION ...........................................................4

    A.  THE PRE-MOTION LETTERS ............................................................ 4

        1.  Delay Would Reduce Efficiency, Not Enhance It. ......................................4

        2.  This Court Has Jurisdiction Over BCP and the Claims Against BCP.........6

    B.  SETTLEMENT PRIOR TO DISCOVERY ........................................................... 8

IV.  THE PROPOSED SET-OFF CLAUSE, INJUNCTION AND FORM OF NOTICE
    ARE PROPER AND DO NOT REQUIRE MODIFICATION .........................................14

    A.  MODIFICATIONS TO THE PROPOSED SET-OFF CLAUSE ......................... 14

    B.  BAR ON CONTRIBUTION OR INDEMNITY CLAIMS ................................. 14

    C.  ACTUAL NOTICE VS. PUBLICATION NOTICE ........................................... 15

V.  CONCLUSION...................................................................................................17

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
   406 U.S. 128 (1972)............................................................................11

*Alvarado Partners, L.P. v. Mehta*,
   723 F. Supp. 540 (D. Colo. 1989)........................................................14

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)....................................................................9, 10, 11

*In re American Int'l Group, Inc. Sec. Litig.*,
   689 F.3d 229 (2d Cir. 2012)............................................................10, 11

*Andrus v. Charlestone Stone Prods. Co., Inc.*,
   436 U.S. 604 (1978)...............................................................................7

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)...............................................................................6

*Cromer Finance Ltd. v. Berger*,
   205 F.R.D. 113 (S.D.N.Y. 2001) .........................................................11

*In re: Facebook, Inc. PPC Adver. Litig.*,
   282 F.R.D. 446 (N.D. Cal. 2012)....................................................11, 12

*In re Gen. Motors Corp. Pick-Up Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995).................................................................9, 10

*Gerber v. MTC Electronic Technologies Co., Ltd.*,
   329 F.3d 297 (2d Cir. 2003).............................................................3, 15

*In re Global Crossing Sec. and ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................1

*In re HealthSouth Corp. Sec. Litig.*,
   572 F.3d 854 (11th Cir. 2009) ...............................................................1

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997).................................................................10

*In re Masters Mates & Pilots Pension Plan and IRAP Litig.*,
   957 F.2d 1020 (2d Cir. 1992)..........................................................14, 15

ii

*Menkes v. Stolt-Nielsen S.A.*,
   270 F.R.D. 80 (D. Conn. 2010).........................................................................10, 11

*In re: Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.*,
   07-cv-9633 (JSR) .......................................................................................................8

*Morrison v. National Australia Bank, Ltd.*,
   130 S. Ct. 2869 (2010).............................................................................................8

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)................................................................................................16

*In re: Mun. Derivs. Antitrust Litig.*,
   252 F.R.D. 184 (SDNY 2008) ...............................................................................13

*National Equip. Rental, Ltd. v. Szukhent*,
   375 U.S. 311 (1964)..................................................................................................6

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012), *petition for cert. filed,* U.S. Oct. 26, 2012 (No. 12-528)...........12

*Quad/Graphics, Inc. v. Fass*,
   724 F.2d 1230 (7th Cir. 1983) .................................................................................3

*Reade-Alvarez v. Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) .............................................................................10

*In re School Asbestos Litig.*,
   921 F.2d 1330 (3d Cir. 1990)....................................................................................3

*In re Sterling Foster & Co., Inc., Securities Litig.*,
   238 F. Supp. 2d 480 (E.D.N.Y. 2002) ...................................................................15

*In re Traffic Executive Association-Eastern Railroads,*
   627 F.2d 631, 634 (2d Cir. 1980)...........................................................................10

*Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*,
   865 F.2d 506 (2d Cir. 1989).....................................................................................6

*In re Viatron Computer Sys. Corp. Litig.*,
   614 F.2d 11 (1st Cir. 1980).................................................................................1, 2

*Waller v. Financial Corp. of America*,
   828 F.2d 579 (9th Cir. 1987) ...................................................................................2

*Zupnick v. Fogel*,
   989 F.2d 93 (2d Cir. 1993)....................................................................................2, 6

iii

## Statutes

28 U.S.C. 1332(a) ...............................................................................................7, 8

Class Action Fairness Act of 2005, codified at 28 U.S.C. 1332(d) ...........................................7, 8

N.Y. Gen. Obligations Law 15-108 ..........................................................................14

Private Securities Litigation Reform Act of 1995, Pub. L. 104-67,
    109 Stat. 737 ..............................................................................................9

## Other Authorities

2 Newberg on Class Actions § 11.54 ..........................................................................3

Manual for Complex Litigation 4th, § 21.652 ...............................................................1

NERA Economic Consulting, *Recent Trends in Securities Class
    Action Litigation* at 18 (July 24, 2012) .................................................................5

Plaintiff Marylebone PCC Limited – Rose 2 Fund ("Plaintiff" or "Marylebone") respectfully submits this Response to Non-Settling Defendants' Objection (the "Objection" or "Objectors' Brief") [D.I. 47] to Plaintiff's Motion [D.I. 43] for (1) preliminary approval of a partial settlement of this Action with defendant BCP Securities LLC ("BCP"); (2) certification of the settlement class (the "Class"); (3) approval of the Notice of Proposed Partial Settlement of Class Action and Settlement Fairness Hearing (the "Notice"); (4) appointment of Marylebone as Class Representative; and (5) appointment of Zamansky & Associates LLC and Stewarts Law US LLP as Class Counsel.

## I.   <u>INTRODUCTION</u>

Partial settlements of class action litigation are commonplace and serve a valuable purpose in advancing complex cases. *See, e.g., In re HealthSouth Corp. Sec. Litig.,* 572 F.3d 854 (11th Cir. 2009) (approving partial settlement); *In re Viatron Computer Sys. Corp. Litig.*, 614 F.2d 11, 14 (1st Cir. 1980) (approving partial settlement); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) (approving partial settlement); Manual for Complex Litigation 4th, § 21.652 (describing partial settlements as "not unusual"). Certain non-settling defendants in this action object to the proposed partial settlement, however, on the basis that the settlement is premature. In the alternative, they request that the proposed Final Order be modified.

The plaintiff respectfully submits that the Objection should be disregarded. First, the non-settling defendants have failed to assert any factual basis to support standing to object. Second, even if they had standing, their objections lack merit.

1

**II.    THE NON-SETTLING DEFENDANTS HAVE FAILED TO ESTABLISH STANDING TO OBJECT TO THE PARTIAL SETTLEMENT WITH BCP**

Federal Rule of Civil Procedure 23(e)(5) provides that members of a proposed class may object to a proposed class settlement.  The objectors in this action, however, are not members of the class, but instead are non-settling defendants, and under long-established law in the Second Circuit, non-settling defendants generally lack standing to object to partial settlements with other defendants.  For example, in *Zupnick v. Fogel*, 989 F.2d 93 (2d Cir. 1993), the Court held "[u]sually, a nonsettling defendant lacks standing to object to a court order approving a partial settlement because a nonsettling defendant is ordinarily not affected by such a settlement."  *Id*. at 98; *accord*, *In re Viatron*, 614 F.2d at 14. The Court further noted, "[t]his rule advances the policy of encouraging voluntary settlement of lawsuits."  *Zupnick*, 989 F.2d at 98 (citing *Waller v. Financial Corp. of America*, 828 F.2d 579, 583 (9th Cir. 1987)).  There is one narrowly tailored exception in cases where the objector meets its burden of "demonstrat[ing] that it will sustain some formal legal prejudice as a result of the settlement."  *Id*.  Here, because the objectors have not even attempted to meet this burden, they lack standing.

Although not formally argued in the objectors' brief, the only conceivable impact on non-settling defendants' legal rights is the proposed bar on contribution and indemnity claims against settling defendant BCP, a standard provision in partial class settlements with fewer than all defendants.  However, in the proposed settlement with BCP, the non-settling defendants are protected by a set-off clause providing a judgment credit in an amount of the proportional fault of BCP or the settlement proceeds, <u>whichever is greater</u>.  *See* Galbraith Decl., Exhibit 1-B, Proposed Final Order, para. 17 [D.I. 44].  Where a settlement provides for such a judgment credit, non-settling defendants' rights are unaffected by the contribution and indemnity bar.  Indeed, the purpose of including a judgment credit in the set-off clause is precisely to avoid

2

prejudicing the non-settling defendants, and the Second Circuit has held that the credit accomplishes this task.

For example, in *Gerber v. MTC Electronic Technologies Co., Ltd.*, 329 F.3d 297 (2d Cir. 2003) then-Judge Sotomayor, writing for the Second Circuit panel, affirmed the District Court's approval of a partial settlement agreement that barred claims for contribution and indemnity against the settling defendant, but protected the non-settling defendants with a set-off credit. *Id.* at 303 ("By awarding a credit that is at least the settling defendants' proven share of liability, the non-settling defendants' rights are protected even without a determination of the fairness of the settlement."). Judge Sotomayor continued:

> By ensuring that, at the end of the day, the non-settling defendants are not held responsible for any damages for which the settling defendants are proven liable, the judgment credit adequately compensates the non-settling defendants for their indemnity and contribution claims, as well as for any other claims where the harm to the non-settling defendants is based on their liability to plaintiffs.

*Id.* at 306.  This rule is consistent with other circuits.  For example, the Third Circuit, quoting from 2 Newberg on Class Actions, has held:

> When a class settlement agreement includes a provision that future contribution judgments will be handled according to applicable law or, in the absence of statute, by a reduction in the judgment against non-settling defendants, such a settlement provision expressly recognizes potential contribution rights of non-settling parties, and does not strip them of any rights of contribution or indemnity.  *Under these circumstances, non-settling defendants do not gain standing to challenge a settlement by another defendant in multi-party litigation*, based on grounds that their contribution or indemnity rights are being affected by the proposed settlement.

*In re School Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (quoting 2 Newberg on Class Actions § 11.54 n. 472) (emphasis added); *accord*, *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1233 (7th Cir. 1983).  Therefore, because the non-settling defendants have failed to establish any

basis for standing to object to the proposed settlement with BCP, their Objection should be disregarded.

### III.   THE MOTION FOR PRELIMINARY APPROVAL OF THE PARTIAL SETTLEMENT IS RIPE FOR CONSIDERATION

#### A.   THE PRE-MOTION LETTERS

##### 1.   Delay Would Reduce Efficiency, Not Enhance It.

Defendant BCP has chosen to settle Plaintiff's claims in this action in exchange for providing significant early value for the proposed class: $500,000.00 in cash, plus payment of claims administration expenses of up to $75,000.00, and most importantly, assistance in the prosecution of remaining claims against non-settling defendants and to comply with document requests propounded by Plaintiff (including specifically all documents produced to investigatory bodies such as the SEC, DOJ and the liquidators in Bermuda).  If approved, Plaintiff's investigation of significant additional facts in this case may enable the Plaintiff to modify, expand or alter the claims against non-settling defendants to the substantial benefit of the class.

Ostensibly in the interest of "efficiency," the non-settling defendants ask this Court to delay preliminary approval of a partial settlement indefinitely to give them time to file motions to dismiss claims against them as outlined in their pre-motion letters to this Court dated Nov. 2, 2012, which would include substantial time for briefing, argument, and consideration by the Court.  Such a lengthy delay would radically <u>reduce</u> efficiency because it would force the non-settling parties to respond to the current complaint, and then respond again to a possible future amended complaint that might be significantly expanded once Plaintiff's counsel has reviewed the BCP documents, many of which may have been used by the SEC and DOJ in their respective civil and criminal cases against Defendant Balboa and by the liquidator in Bermuda in its wind-

up of the Millennium hedge fund and pursuit of arbitration claims against the Millennium defendants.

Delaying access to these BCP documents would also harm the proposed class by denying Plaintiff information that could be used to conduct the sort of investigation that courts regularly encourage counsel to conduct.  Although the complaint as currently drafted more than adequately pleads facts necessary to sustain all claims currently therein and additional investigation is not required, the BCP documents could provide substantial additional support for the claims, perhaps mooting some of the non-settling defendants' alleged bases for dismissal.   More importantly, it is possible that review of the BCP documents could also lead to new claims being asserted.  It would better protect the class and enhance judicial efficiency to preliminarily approve the partial settlement with BCP now and allow counsel time to review the new documents, permit an amended complaint if warranted after review of the documents, and subsequently permit a single round of briefing on any motions to dismiss. Granting the non-settling defendants' requested delay might lead to two rounds of motion practice, and thus reduce judicial efficiency, not enhance it.

Furthermore, the Objectors ignore the fact that early settlements in complex investor class actions prior to the filing of the motion to dismiss are commonplace.  According to consulting firm NERA, between 2000 and 2012, 10.7% of more than 1,000 investor class actions settled prior to a motion to dismiss ever being filed.  Of the remaining cases, another 21.7% settled prior to a determination on the filed motion to dismiss.  *See* NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation* at 18 (July 24, 2012).  It is not clear from the data which cases involved partial settlements but it is clear that hundreds of investor class actions in the past decade have settled prior to a determination on a motion to dismiss, and there is no

logical reason why a partial settlement should be prohibited merely because the non-settling defendants want to move to dismiss their claims.  Indeed, it should come as no surprise that the non-settling defendants failed to cite to a single case in which a proposed partial settlement with one defendant was delayed to give the non-settling defendants time to brief dispositive motions to dismiss.  Such a position runs contrary to the clear policy in the Second Circuit encouraging settlements of complex investor class actions.  *See Zupnick*, 989 F.2d at 98; *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989) (noting "public policy of encouraging settlements and avoiding wasteful litigation").

**2.  This Court Has Jurisdiction Over BCP and the Claims Against BCP**

Non-settling defendants argue that their pre-motion letters raise jurisdictional issues that must be resolved prior to consideration of the proposed partial settlement.  Respectfully, there are no jurisdictional issues with regard to the claims against BCP.[1]  First, BCP conducts business in this District, thus establishing <u>personal</u> jurisdiction, see Fed. R. Civ. P. 4(k)(1)(a), and furthermore, BCP has chosen not to contest personal jurisdiction in this District for purposes of this settlement, as is permitted by federal law.  *See, e.g., Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, n.14 (1985) (noting that "the personal jurisdiction requirement is a waivable right")*; accord, National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311 (1964).  Whether or not this Court has personal jurisdiction over the non-settling defendants is irrelevant to the question of personal jurisdiction over BCP, and the non-settling defendants have failed to cite to a single

---

[1]  BCP has also consented to exclusive personal jurisdiction in this Court (for purposes of the settlement only) with respect to the implementation, construction and enforcement of the Settlement Agreement.  *See* Galbraith Decl., Ex. 1, section 8.5 [D.I. 44].

6

case requiring personal jurisdiction over non-settling defendants prior to preliminarily approving a settlement with a different defendant.

Likewise, <u>subject matter</u> jurisdiction over the claims against BCP is clearly established. The Plaintiff is proceeding under the CAFA amendments to the diversity jurisdiction rules, see Class Action Fairness Act of 2005, codified at 28 U.S.C. 1332(d), and all elements of CAFA jurisdiction have been properly pled: there are more than $5,000,000.00 in damages alleged, there are more than 100 class members (a fact which is even alleged in the U.S. government's case against Defendant Balboa), and the citizenship of at least one member of the proposed class is diverse to BCP ("minimal diversity").  Further discovery on this point is not necessary at this time because the Plaintiff is a Guernsey investor and BCP is a Delaware entity based in Connecticut, and thus the citizenship of the other class members is irrelevant; minimal diversity is already established.  In addition, because the proposed settlement contemplates actual notice to all class members, the Court will know with certainty prior to final approval whether the class does in fact have more than 100 members.

Finally, because this settlement only involves one defendant – BCP – it should be noted that this Court also has traditional diversity jurisdiction over the claims against BCP, because complete diversity exists between the Plaintiff and BCP.  *See* 28 U.S.C. 1332(a).  Although traditional diversity jurisdiction was not asserted as a basis for subject matter jurisdiction in the complaint, facts were alleged to support such jurisdiction with respect to claims only against BCP, which is sufficient even absent a citation to the alternative basis.  *See Andrus v. Charlestone Stone Prods. Co., Inc.,* 436 U.S. 604, 607 (1978) (not required that complaint state statutory basis for court's subject matter jurisdiction so long as "facts alleged in it are sufficient to establish such jurisdiction."). If this Court determines at a later time that CAFA jurisdiction is

unwarranted, only the claims against the non-settling defendants would be affected, because claims against BCP would be permissible under a traditional diversity basis.  If instead this Court does have CAFA jurisdiction, claims against BCP can still proceed under CAFA.  Either way, there is no lack of subject matter jurisdiction over the claims against BCP and there is absolutely no reason to resolve subject matter jurisdiction issues with respect to non-settling defendants at this time.[2]

## B.    SETTLEMENT PRIOR TO DISCOVERY

The objecting non-settling defendants further argue that settlement is premature because discovery has not started and thus information necessary to support the application for class certification is lacking.  This argument, completely unsupported by any relevant case authority, is belied by the frequent practice of settling claims prior to discovery.  Indeed, it is precisely because parties wish to avoid discovery that some cases settle, often even prior to any ruling on initial dispositive motions.

In addition to the NERA data cited above with respect to the hundreds of investor class actions that settle prior to discovery, a recently settled investor class action is instructive.  On May 21, 2008, investor plaintiffs filed a consolidated amended complaint against Merrill Lynch and various related defendants alleging that various false statements and omissions inflated the

---

[2] In the Millennium Defendants' letter to this Court dated Nov. 2, 2012, referenced in the non-settling defendants' Brief, the Objectors also ask this Court to create a new rule arbitrarily prohibiting foreign investors from invoking CAFA as a basis for subject-matter jurisdiction, despite the clear reference to "foreign" class members in the statute. *See* 28 U.S.C. 1332(d)(2)(B) (minimal diversity met if one member of the class is a "citizen or subject of a foreign state") .  In support of this novel idea, the Nov. 2 letter cites to one case, *Morrison v. National Australia Bank, Ltd.*, 130 S. Ct. 2869 (2010), a Supreme Court case that, <u>as a matter of statutory interpretation,</u> held that Section 10(b) of the Securities and Exchange Act of 1934 does not apply extraterritorially.  Citation to *Morrison* is odd in light of Justice Scalia's admonition that he explicitly needed to "correct a threshold error" in the lower court's opinion and clarify that he was deciding a question of choice of law, ***and not a question of subject matter jurisdiction***.  Indeed, even though the court ultimately ruled against the application of Section 10(b) to certain foreign transactions, it still held that the District Court had subject matter jurisdiction over claims brought by the foreign investors.  *Id.* at 2877.

8

value of Merrill common shares and 14 series of preferred shares. *See In re: Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.*, 07-cv-9633 (JSR).   Under the governing statute,[3] discovery was stayed pending the dispositive motion to dismiss, and oral arguments on the motion were scheduled for January 15, 2009.   Eight days <u>before</u> arguments, obviously prior to any determination on the motion and long before discovery could have started, the parties settled for $475 million, a record at the time for credit-crisis-related litigation.   The stipulation of settlement was quickly filed on February 17, 2009, and a mere six weeks later, Judge Rakoff preliminarily approved the settlement, certified the class, and appointed interim counsel.   There was no need for the "full discovery" demanded by objectors in this action.   The court allowed any necessary additional detail to be provided in supplemental information in support of the application for final approval several months later.

The Objectors are also incorrect that the settling parties must establish all Rule 23 elements at this time, for two reasons.   First, not all Rule 23 elements need be established at all, because this is a settlement class, not a litigation class.   Non-settling defendants cite to an outdated Third Circuit opinion from 1995 holding that "actions certified as settlement classes must meet the same requirements under Rule 23 as litigation classes."   *In re Gen. Motors Corp. Pick-Up Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 799-800 (3d Cir. 1995) ("*In re Gen. Motors*"); *see* Objectors' Brief at 6.   However, this narrow point is no longer good law, having been implicitly overruled by the Supreme Court two years later.   In the landmark class action decision *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court held that settlement classes are now easier to settle than litigation classes, because any Rule 23 prong

---

[3]  The Private Securities Litigation Reform Act of 1995, or PSLRA, Pub. L. 104-67, 109 Stat. 737.

related to trial manageability (including most of Rule 23(b), such as predominance) is not

relevant. *Id.* at 618-619 (citing *In re Gen. Motors*, and noting that the "Third Circuit's opinion

bears modification in that respect"). As the Second Circuit held last year,

> The [United States Supreme] Court squarely held that 'settlement is
> relevant to a class certification.' . . . According to the Court, a district
> court 'confronted with a request for settlement-only certification . . . need
> not inquire into whether the case, if tried, would present intractable
> management problems, for the proposal is that there be no trial.'

*In re American Int'l Group, Inc. Sec. Litig.*, 689 F.3d 229, 238-39 (2d Cir. 2012) (quoting

*Amchem*); *accord*, *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 88 (D. Conn. 2010) ("Where pre-

certification negotiations successfully culminate in an agreement, plaintiffs typically seek

certification for the limited purpose of giving effect to the settlement reached. . . . These

circumstances **necessarily** alter the character of the Rule 23 inquiry." (citing *Amchem*) (emphasis

added)). It is also fair to note that "in the Second Circuit, 'Rule 23 is given liberal rather than

restrictive construction, and courts are to adopt a standard of flexibility' in deciding whether to

grant certification." *Reade-Alvarez v. Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y.

2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

More importantly for the current motion for preliminary approval, the Objectors seem

to be disregarding the different standards for final approval and preliminary approval. In the

Second Circuit, preliminary approval does not require a full fairness hearing nor a showing that

all Rule 23 elements are met; instead, it is simply akin to a showing of probable cause:

> Preliminary approval of a class action settlement, in contrast to final
> approval, "is at most a determination that there is what might be termed
> 'probable cause' to submit the proposal to class members and hold a full-
> scale hearing as to its fairness." In re Traffic Executive Association-
> Eastern Railroads, 627 F.2d 631, 634 (2d Cir. 1980). As such, it "is
> appropriate where it is the result of serious, informed, and non-collusive
> negotiations, where there are no grounds to doubt its fairness and no

> *other obvious deficiencies . . . and where the settlement appears to fall*
> *within the range of possible approval."*

*Menkes*, 270 F.R.D. at 101 (additional multiple internal citations omitted).

Likewise, the objectors are incorrect that discovery is needed prior to class certification of the settlement-only class in order to establish reliance on a class-wide basis (and thus to establish the preponderance element).  BCP is settling all claims.  Reliance is thus no longer a contested issue as to the claims against BCP and it does not need to be established as discussed above.  Because a settlement eliminates the need for a trial, there are no "intractable management" problems and thus the predominance prong of Rule 23(b)(3) does <u>not</u> require proof of class-wide reliance or a fraud-on-the-market presumption:

> *We hold that, under* Amchem Products, Inc. v. Windsor, *521 U.S. 591,*
> *620 (1997), a securities fraud class's failure to satisfy the fraud-on-the-*
> *market presumption primarily threatens class certification by creating*
> *'intractable management problems' at trial.* ***Because settlement***
> ***eliminates the need for a trial, a settlement class need not demonstrate***
> ***that the fraud-on-the-market presumption applies*** *to its claims in order*
> *to satisfy the predominance requirement.*

*In re American Int'l Group Inc. Sec. Litig.*, 689 F.3d at 232 (emphasis added).[4]

In addition, the non-settling defendants' arguments with respect to standing lack merit.  First, the Plaintiff has clearly alleged Article III harm, and BCP has chosen to settle and to provide settlement cash, and would only contest standing if the settlement fails.   Non-settling

---

[4]  Even if reliance is required in order to establish predominance, it can clearly be presumed in this case and thus discovery is not needed.  For example, an investor in a hedge fund is presumed to rely on the fund's reported Net Asset Value, or "NAV", as the "market price" and the fraud-on-the-market presumption applies even though no "efficient market" exists for the hedge fund interests.  *See, e.g., Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113, 131 (S.D.N.Y. 2001) ("Courts presume reliance 'where it is logical to presume that reliance in fact existed.' . . . It is difficult to imagine an investor putting money into any fund without relying on the integrity of the process for calculating the fund's NAV." (internal citations omitted)).  Likewise, where the allegation relates to omissions by a person with an affirmative duty to provide accurate information to investors, the U.S. Supreme Court has held that reliance can be presumed.  *See Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153-54 (1972).

11

defendants' citation to *In re: Facebook, Inc. PPC Adver. Litig.*, 282 F.R.D. 446 (N.D. Cal. 2012) does not address the issue here.  In the *Facebook* opinion, which denied a <u>contested</u> motion for certification of a <u>litigation</u> class, the court held that the named plaintiffs did not even "attempt" to plead "concrete injury" resulting from Facebook's wrongdoing, *id*. at 454, and thus failed to establish standing.  Here, the Plaintiff pled that it, like all other investors, lost its entire investment in the Millennium fund overnight; in addition, Plaintiff and BCP are seeking a settlement class, not a litigation class.  These facts establish concrete Article III harm and standing, unlike in the cited *Facebook* case.  Also, the non-settling defendants' argument that the Plaintiff only has standing to assert claims on behalf of investors in one Millennium fund and not both is contrary to recent Second Circuit law.  *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) (investor in one fund has standing to assert class claims on behalf of investors in other fund where misrepresentations were common), *petition for cert. filed,* U.S. Oct. 26, 2012 (No. 12-528).

Finally, it should be noted that limited discovery is in fact contemplated by the settlement agreement.  The most important benefit provided to the class by the settlement with BCP is BCP's agreement to cooperate in the prosecution of claims against the non-settling defendants and to comply with document requests propounded by plaintiff, including the production of all documents provided to the SEC, DOJ and the liquidators in Bermuda.  *See* Galbraith Decl., Exhibit 1, at Section 3.3 [D.I. 44].  BCP's obligation is triggered by the Court's approval of the request for <u>preliminary</u> approval, not final approval, and thus full document discovery with respect to BCP is contemplated during the interim between preliminary and final approval.[5]

---

[5]  On p. 8 of their Brief, Objectors suggest that the settlement money to be funded by BCP should be placed into escrow pending final approval by this Court.  The Plaintiff agrees, but the Settlement Agreement already provides

12

### C.      APPOINTMENT OF INTERIM CLASS COUNSEL

The objecting non-settling defendants argue that the request for appointment of interim class counsel is premature, because there is no "rivalry among competing law firms." *See* Objectors' Brief, p. 9.[6]   However, the Federal Rules of Civil Procedure plainly require the appointment of class counsel at the class certification stage, and class certification is a necessary precondition to a class settlement, even a partial class settlement as to one defendant.  *See* FRCP 23(c)(1)(B) ("an order that certifies a class action . . . ***must*** appoint class counsel.") (emphasis added); *accord*, FRCP 23(g)(1).   It follows that appointment of interim lead is necessary following preliminary approval of a proposed class settlement so that counsel can effectively protect the putative class during this interim period between preliminary approval and final approval.  Counsel for plaintiff could not find a single case denying the request for appointment of lead counsel when approval for a class settlement is sought, and objectors failed to note any.[7]

---

for an escrow mechanism.  Section 1.30 establishes a "Settlement Account" and Section 1.31 provides for Garden City Group (the proposed claims administrator) to be the agent of the account.  *See* Galbraith Decl., Exhibit 1, Settlement Agreement, Sections 1.30 and 1.31 [D.I. 47].

[6]  Objectors also argue that proper service has not been made on Defendant Balboa.  *See* Objectors' Brief, fn. 9. This assertion is incorrect; Mr. Balboa has been served in accordance with New York rules for defendants who live in gated communities, see D.I. 25, and thereafter Plaintiff mailed all pleadings (including the motion for preliminary approval of the BCP settlement) to Mr. Balboa's home and mailed a second copy to his lawyer in his criminal case as a precaution.  The Plaintiff respectfully submits that Mr. Balboa's failure to enter an appearance in this civil action is irrelevant to the consideration of the BCP settlement.

[7]  In their argument against the appointment of interim lead counsel, objectors cite to one case, *In re: Mun. Derivs. Antitrust Litig.*, 252 FRD 184 (SDNY 2008).  *See* Objectors' Brief, p. 9.  The court in the cited case, however, resolved a normal leadership contest and did not remotely touch upon any standards for appointment when there are no "rivals."  In addition, the court was faced with motions for interim leadership under Rule 23(g), not Rule 23(c) as in the current case.  As such, the opinion does not support the proposition for which it is cited.

**IV.   THE PROPOSED SET-OFF CLAUSE, INJUNCTION AND FORM OF NOTICE ARE PROPER AND DO NOT REQUIRE MODIFICATION**

**A.   MODIFICATIONS TO THE PROPOSED SET-OFF CLAUSE**

The Objectors request a modification to the set-off clause in the proposed Final Judgment and Order of Dismissal to account for the fact that BCP has agreed to pay $500,000.00 to the class, and pay additional money to the claims administrator (up to $75,000.00) so that such costs are not borne by the class.  It is not clear from the Objectors' Brief exactly how they propose to modify the set-off clause, and Plaintiff does not believe any modification is necessary, but Plaintiff is open to a modification if needed to ensure that the judgment credit is properly described and thus the non-settling defendants' rights are not prejudiced.

**B.   BAR ON CONTRIBUTION OR INDEMNITY CLAIMS**

The non-settling defendants request that the litigation bar in the proposed Final Order only bar contribution claims, not claims for indemnity.  This request should be rejected.  New York General Obligations Law statutorily bars claims for contribution against settling defendants in multi-defendant actions, even if a judgment approving a partial settlement is silent on the issue.  *See* N.Y. Gen. Obligations Law 15-108.  Without such statutory protections, common in many states, threats of cross-claims for contribution would make partial settlements difficult.  *See, e.g., In re Masters Mates & Pilots Pension Plan and IRAP Litig.*, 957 F.2d 1020, 1028 (2d Cir. 1992) ("If a nonsettling defendant against whom a judgment had been entered were allowed to seek payment from a defendant who had settled, then settlement would not bring the latter much peace of mind."); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 550 (D. Colo. 1989) ("Contribution inhibits settlement, particularly in complex, multiple defendant actions such as this.").

14

Although the statute only speaks of contribution, courts can (and do) also bar indemnity claims.  Non-settling defendants have failed to cite to a single case of a court ever striking "indemnity" from a requested order, and in fact it is standard practice in New York courts to include both contribution claims and indemnity claims in the litigation bar.  *See, e.g., Gerber*, 329 F.3d at 305 ("The non-settling defendants do not dispute that the district court properly barred their contribution **and indemnification** claims" (emphasis added)); *In re Masters Mates & Pilots Pension Plan,* 957 F.2d at 1031-32 (rejecting objection of non-settling defendant and approving settlement bar for claims of contribution **and indemnity**); *In re Sterling Foster & Co., Inc., Securities Litig*., 238 F. Supp. 2d 480, 485 (E.D.N.Y. 2002) (rejecting objection of non-settling defendant to bar against claims for contribution **and indemnity**).

Indeed, even though the New York general obligation law only speaks of "contribution" and not "indemnity," it would be illogical to include one without the other.  As the Second Circuit has noted, indemnity is just a form of a contribution when the other party is 100% at fault.  "[W]e see no reason why a court-approved settlement bar should have a different effect on that right [indemnity] than it would on contribution."  *In re Masters Mates & Pilots Pension Plan,* 957 F.2d at 1032.

### C.    ACTUAL NOTICE VS. PUBLICATION NOTICE

Finally, non-settling defendants object to Plaintiff's proposal to provide actual notice rather than publication notice to the potential class members.  This last request is baffling for two reasons.

First, due process requires actual notice if possible.  For example, FRCP 23(c)(2) requires "best notice that is practicable under the circumstances" and the Supreme Court has said that actual mailed notice is the best notice practicable if the addresses were known or could be known

15

with reasonable effort. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The Plaintiff proposes to protect the proposed class by voluntarily attempting to provide actual notice, and it is unusual (to say the least) for non-settling defendants to argue in favor of a lower procedural protection for the class.

Second, the Millennium defendants claim to have outsourced administration of the hedge fund to an administrator (a well-know hedge fund services company called Argonaut) and thus technically the contact information for the class members resides with them. It seems unlikely that at least one of the Millennium defendants lacks the power to obtain its investors' contact information from its own administrator, but even if so, Argonaut is based in Bermuda, and non-party subpoenas are easily served (Bermuda is a signatory to the Hague Convention). Thus there is no reason not to attempt actual notice in this case and publication notice is neither necessary nor appropriate.

16

V.    **CONCLUSION**

Plaintiff respectfully requests that the Court grant preliminary approval of the proposed

settlement with BCP as described herein and execute the submitted proposed Order.

Dated: February 14, 2013                    Respectfully submitted,

**ZAMANSKY & ASSOCIATES LLC**

By:  */s/ Jacob H. Zamansky*
    Jacob H. Zamansky
    Edward H. Glenn, Jr.
    Kevin D. Galbraith
    50 Broadway, 32nd Floor
    New York, New York 10004
    Tel.: (212) 742-1414
    Fax: (212) 742-1177
    *jake@zamansky.com*

**STEWARTS LAW US LLP**

By:  */s/ David A. Straite*
    David A. Straite
    Ralph N. Sianni
    Michele S. Carino
    535 Fifth Avenue, 4th Floor
    New York, New York 10017
    Tel.: (212) 897-3730
    Fax: (212) 897-3733
    *dstraite@stewartslaw.com*

    ***Co-Counsel for Plaintiff and***
    ***Proposed Class Counsel***

7586-1