UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARYLEBONE PCC LIMITED—ROSE 2 FUND ON BEHALF OF ITSELF AND ALL SIMILARLY SITUATED PERSONS,<br><br>Plaintiff,<br><br>-against-<br><br>MILLENNIUM GLOBAL INVESTMENTS LTD., MILLENNIUM ASSET MANAGEMENT LTD., MICHAEL R. BALBOA, GLOBEOP FINANCIAL SERVICES LLC, GLOBEOP FINANCIAL SERVICES LTD., SS&C TECHNOLOGIES, INC., BCP SECURITIES LLC and XYZ CORP.,<br><br>Defendants. | Case No. 12-cv-3835 (PAC)<br><br>DECLARATION OF NICHOLAS DIAMAND IN SUPPORT OF PLAINTIFF'S UNOPPOSED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR: (1) FINAL APPROVAL OF COMBINED SETTLEMENT; (2) CERTIFICATION OF THE SETTLEMENT CLASS; (3) APPROVAL OF DISTRIBUTION OF SETTLEMENT FUNDS |

Nicholas Diamand, Esq., hereby declares as follows:

1.      I am licensed to practice law in the State of New York, and I am an attorney with the law firm of Lieff Cabraser Heimann & Bernstein, counsel for Plaintiff in the above-captioned action. I submit this Declaration of Nicholas Diamand in Support of Plaintiff's Memorandum of Law in Support of Plaintiff's Unopposed Motion for: (1) Final Approval of Combined Settlement; (2) Certification of the Settlement Class; (3) Approval of Distribution Of Settlement Funds with Defendants Millennium Global Investments Ltd., Millennium Asset Management Ltd., GlobeOp Financial Services, LLC, GlobeOp Financial Services Ltd., SS&C Technologies, Inc., and BCP Securities LLC.

2. Attached hereto as Exhibit 1 is a proposed final order and judgment approving the Combined Settlement, certifying the Settlement Class and approving the distribution of the Settlement Funds.

**The Parties' Settlement Negotiations**

3. Upon information and belief, and as informed by Zamansky LLC which has represented Plaintiff from the beginning of this action and during the BCP settlement described herein, beginning in August 2012, Plaintiff's counsel and counsel for BCP began discussing a potential settlement. Numerous emails and telephone calls were exchanged among the parties to explore whether settlement discussions might be in the parties' best interests.

4. In October 2012, Plaintiff's counsel and counsel for BCP began to draft preliminary terms to settle Plaintiff's claims against BCP. As part of that process, BCP provided confidential information concerning BCP's financial condition, which Plaintiff reviewed, including an audited financial statement from year-end 2012 and the FOCUS Report filed by BCP with the United States Securities and Exchange Commission for the period covering October 1 to October 31, 2011. Plaintiff's review of these financial disclosures confirmed that the proposed settlement appropriately considered BCP's financial condition.

5. In the late spring of 2013, Plaintiff's counsel, counsel for the Millennium Defendants, and counsel for the GlobeOp Defendants began discussing a potential mediation process. Numerous e-mails and telephone calls were exchanged among counsel to explore whether settlement discussions might be in the parties' best interests.

6. On June 25, 2013, and again on October 7, 2013, Plaintiff's counsel and counsel for the Millennium Defendants, and counsel for the GlobeOp Defendants attended all-day mediation sessions with Mediator David M. Brodsky; the parties and the mediator later held numerous telephonic conferences.

7. The parties prepared detailed mediation briefing. Counsel for the Millennium Defendants, and counsel for the GlobeOp Defendants also produced records and other materials at Plaintiff's Counsel's request.

8. Central to the negotiations – at and after the in-person mediation sessions – was the conflicting positions of Plaintiff's counsel and counsel for the Millennium Defendants, and counsel for the GlobeOp Defendants regarding the direct or causal connection between the Defendants' alleged fraud and the Funds' liquidation.

9. Plaintiff's counsel sought the advice and analysis of a well-respected damages expert, Anthony Saunders, Ph.D., John M. Schiff Professor of Finance, Stern School of Business, New York University, who examined different economic models relating to the valuation of Nigerian and Uruguayan warrants, the illiquid assets at issue here.

10. Plaintiff's counsel carefully followed the Balboa Criminal Proceedings, attending critical testimony during the trials and reviewing the transcripts of both Balboa's Mistrial and subsequently Balboa's Conviction. Plaintiff's counsel reviewed trial exhibits produced during the Balboa Criminal Proceedings.

11. In addition to the transcripts of and the exhibits produced during the Balboa Criminal Proceedings, Plaintiff's counsel reviewed copies of monthly NAV statements for the Millennium Hedge Fund, offering memoranda, a description of the securities in the Fund's portfolio and investor subscription amounts and dates (which, at that stage, had been redacted to de-identify the investors).

12. Prior to entering into the Combined Settlement, Plaintiff's counsel carefully considered the Defendants' financial situation by examining both publicly available information (obtained both in the U.S. and abroad) and receiving confirmation from counsel for the

Millennium Defendants, and counsel for the GlobeOp Defendants confirming the accuracy of this information.

**Class Notice, Claims Administration and Class Member Reaction**

13. The Garden City Group, Inc. ("Garden City Group") is the Claims Administrator in connection with the Combined Settlement. Garden City Group's Chief Operating Officer, Jennifer Keough provided a declaration in support of the final approval of the Combined Settlement (the "Keough Declaration"). It is attached as Exhibit 2. The Keough Declaration describes the circumstances leading up to the mailing of Class Notice on April 25, 2014 (after the Court granted Preliminary Approval of the Combined Settlement on April 24, 2014) and the ensuing claims administration process. In addition, it provides a description of the telephone hotline and the website established to address inquiries and provide information relating to the Combined Settlement.

14. Attached as Exhibit 3 is a spreadsheet finalized and updated by the Garden City Group as of June 30, 2014 that identifies that between April 25 and June 29, 2014: (1) there were a total of 30 calls to the Combined Settlement telephone hotline; (2) there were 196 visits to the Combined Settlement website; and (3) there were 24 Class Notices returned and thereafter re-sent to new or alternate addresses of Class Members.

15. Exhibit 3 as well as the Keough Declaration confirms that as of June 29, 2014, five days after the Opt-Out Deadline of June 24, 2014, there were no exclusions from or objections to the Combined Settlement.

16. As noted in the Keough Declaration, the anecdotal reports from the Claims Administrator who have spoken to Class Members since Notice was sent have been positive.

17. In addition, between April 24, 2014 and June 30, 2014, I have communicated with a number of Class Members who have been supportive of the settlement. By way of example,

    a. On May 7, 2014, I exchanged emails with a Class Member based in Poland who expressed satisfaction with the Combined Settlement;

    b. On May 13, 2014, I exchanged emails with and spoke to a Class Member based in Luxembourg who confirmed her intention to remain in the Class and expressed satisfaction with the Combined Settlement; and

    c. On May 16, 2014, I exchanged emails with and spoke to a Class Member based in Ireland who confirmed the intention of her client to remain in the Class and expressed satisfaction with the Combined Settlement.

**Settlement Amount**

  18. As Plaintiff's counsel has discovered through the mediation process, careful review of the Balboa Criminal Proceedings, and extensive consultation with its damages expert, investors' losses directly related to and recoverable from the Settling Defendants' alleged misconduct may only be a small fraction of the total subscription amount in the Millennium Hedge Fund.

  19. In testimony during the Balboa Criminal Proceedings, Matthew Howard, of the Criminal Prosecution Assistance Group of the Financial Industry Regulation Authority ("FINRA") testified that he reviewed materials related to the overvaluation of Nigerian warrants by Defendants in this litigation.  Mr. Howard testified that, had the Nigerian warrants been valued correctly, rather than according to the inflated numbers provided by Balboa and the other Defendants, the NAV "would have been about $78 million less." Balboa Criminal Proceedings, June 20, 2013, p.1393:7.

  20. Plaintiff's expert Professor Saunders conducted his own analysis of the Nigerian warrants and the overvaluation associated with the Defendants' misconduct.  He reviewed

publicly-available monthly benchmarks of emerging-market and distressed-market returns prepared by the French Business School Ecole des Hautes Etudes Commerciales du Nord for the period between December 2006 and through October 2008 (starting when the Millennium Hedge Fund began operations until the date it was wound up).  He also reviewed the data provided by Defendants at and after the in-person mediation session and the testimony of Mr. Howard of FINRA.  His conclusion generally matched that of Mr. Howard albeit that his view was that the total impact of the overvaluation was between $60 million and $65 million.

**Plan of Allocation**

21.     Through an application in February 2014 to the Supreme Court in Bermuda which supervises the liquidation proceedings of the Off-Shore Fund, Plaintiff's counsel obtained copies of the share register of the Off-Shore Fund provided to the liquidators as at the date of liquidation.  That register has been updated by the liquidators since then to reflect transfers in ownership of shares in that Fund.  The liquidators also provided Plaintiff's counsel with a copy of the share register of the Delaware Fund.

22.     In total, the Millennium Hedge Fund comprises 5,877,888 shares of which 251,665 shares are in the Delaware Fund and 5,626,323 are in the Off-Shore Fund.  Those shares are owned by 177 Class Members.  Settlement Class Members own as few as 40 shares and as many 705,566 shares.

23.     If the Plan of Allocation is approved at the Final Approval Hearing, each Settlement Class Member's share of the Net Settlement Fund will be calculated on a *pro rata* basis according to the total number of Settlement Class Members who do not submit a timely opt-out form to the Claims Administrator, and the sum of the total subscriptions to the Funds made by those Settlement Class Members.

24. Plaintiff's counsel and the Claims Administrator have been and continue to be in contact with the Joint Liquidators of the Millennium Hedge Fund who are assisting resolving any questions about the identity and updated location of and distribution to the Settlement Class Members.

25. Since October 2008, upon information and belief, no Settlement Class Member has received any return or reimbursement from subscriptions made in the Funds.

**Defendants Do Not Contest Plaintiff's Fee Application**

26. As noted in the Stipulation between Plaintiff and the Millennium/GlobeOp Defendants (at ¶ H. 1.) and in the BCP Settlement Rider between Plaintiff and BCP (at ¶ 1), the Settling Defendants do not contest Class Counsel's application to this Court for payment of the costs incurred by Class Counsel in litigating this action, or attorneys' fees of not more than 25 percent of the Settlement Amount

27. As further described in Plaintiff's contemporaneous motion in for approval of attorneys' fees and reimbursement of expenses, Plaintiff's Counsel have undertaken substantial work and expended considerable hours in prosecuting this action.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York  
       June 30, 2014

*Nicholas Diamand*  
Nicholas Diamand